WO                                                                                                    SC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Reginaldo Torrez,                          )      No. CV 07-1551-PHX-SMM (JRI)
                                           )
                    Plaintiff,             )      **ORDER**
                                           )
vs.                                        )
                                           )
Correctional Corporation of America, et    )
al.,                                       )
                                           )
                    Defendants.            )
_____    )

        Plaintiff Reginaldo Torrez, who is confined in the Federal Correctional Institution in
Big Spring, Texas, has filed a *pro se* civil rights Complaint alleging constitutional violations,
international treaty violations pursuant to the Alien Tort Claims Act (ATS)[1], and state law
claims.[2]  (Doc.# 1.)[3]  He has also filed an Application to Proceed *In Forma Pauperis*.  (Doc.#
3.)  The Court will dismiss this action in part and order Plaintiff to show cause why his

_____

[1]  28 U.S.C. § 1350.

[2]  Plaintiff indicates that he seeks relief for constitutional violations pursuant to 42
U.S.C. §§ 1983 and 1985.  Federal inmates seeking damages for violations of their
constitutional rights by individual employees of CCA must seek relief pursuant to Bivens,
rather than §§ 1983 and 1985.  See Agyeman v. Corrections Corp. of America, 390 F.3d
1101, 1104 (9th Cir. 2004) (immigration detainee seeking relief from individual CCA
employees had to bring suit pursuant to Bivens), cert. denied sub nom. Gerber v. Agyeman,
125 S. Ct. 2941 (2005).

[3]  "Doc.#" refers to the docket number of filings in this case.

JDDL-K

remaining claims should not be dismissed as time-barred.

**I.    Application to Proceed *In Forma Pauperis* and Filing Fee**

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted pursuant to 28 U.S.C. § 1915(a). (Doc.# 3.) Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will not assess an initial partial filing fee. The filing fee will be collected monthly in payments of 20% of the previous month's income each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

**II.    Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

**III.    Complaint**

Plaintiff, a Mexican citizen, alleges four claims for relief in his Complaint in connection with injuries he suffered during transport on a Corrections Corporation of America (CCA) bus and treatment therefor. He sues CCA; John Doe, the CCA bus driver; and Dr. G. Sabal, a CCA physician. Plaintiff seeks declaratory, compensatory, and punitive relief.

Plaintiff alleges the following facts: Plaintiff was a federal pretrial detainee in the custody of CCA at relevant times. On October 24, 2003, Plaintiff and other federal inmates, were being transported in a CCA bus from the federal courthouse in Phoenix back to CCA's Central Arizona Detention Center (CADC) in Florence, Arizona. Plaintiff was shackled hand and foot but was not secured by a seat belt. As the bus driver attempted to reverse out of the

garage, he hit a pillar.  Plaintiff was thrown against a fiberglass bench injuring his shoulder.[4]
Before continuing to CADC, the bus driver informed the inmates that anyone who was
injured would be taken to the hospital.  (Id.)  After arrival at CADC, Plaintiff was left in
handcuffs in a small room for two hours, despite "excruciating pain."  (Id.)  At about 9:30
p.m., a CCA captain photographed Plaintiff's injury and a medical staff member looked at
the injury and prescribed pain pills to Plaintiff, but no x-rays were taken.  (Id. at 8-9.)  The
staff member told Plaintiff that a doctor would be available the next day.  (Id. at 9.)  On
October 25, 2003, Dr. Sabal examined Plaintiff's shoulder and told him that it was broken.
(Id.)  Dr. Sabal ordered x-rays and provided a sling for Plaintiff's arm.  (Id.)  On October 26,
2003, Plaintiff was transported to a private clinic where his shoulder was x-rayed and he
received an injection and pain pills.  (Id.)  The next day, Plaintiff was approached by CCA
officials and asked to sign a form releasing CCA from liability for the accident.  (Id. at 9-10.)
Plaintiff refused to sign.  (Id. at 10.)

On November 6, 2003, Plaintiff went to sick call because he had not been notified of
the x-ray results and he continued to suffer from extreme shoulder pain.  (Id.)  Plaintiff
alleges that he repeatedly reported to sick call over the next month complaining of extreme
pain but continued not to be informed of x-ray results and to receive only pain medication
and no other treatment.  (Id.)  On November 28, 2003, Plaintiff submitted a CCA inmate
grievance because of the "extreme pain" he was suffering without being provided care other
than pain medication.  (Id.)  The same morning he submitted the grievance, Dr. Sabal
prescribed more medication, but when Plaintiff attempted to pick up the prescription, the
pharmacist told Plaintiff there was no medication for him, leaving Plaintiff without any pain
relief.  (Id. at 11.)  On December 1, 2003, Plaintiff went to sick call again because of pain.
(Id.)  Instead of prescribing pain medication, Dr. Sabal took away the sling he had previously
provided to Plaintiff.  (Id.)  When Plaintiff inquired why and stated that he needed the sling,

---

[4]  According to Plaintiff, the bus driver had been attempting to reverse out of the
parking garage at the time.  (Doc.# 1 at 8.)

1   Dr. Sabal allegedly told Plaintiff he did not care.  (<u>Id.</u> at 11, 12.)

2   　　　　On December 4, 2003, Plaintiff returned to sick call and was prescribed pain

3   medication for 30 days.  (<u>Id.</u> at 12.)  Shortly thereafter, Plaintiff was transferred to New

4   Mexico for 90 days before being transferred to Big Spring on April 6, 2004.  (<u>Id.</u>)  Plaintiff

5   requested and received pain medication throughout this period but did not receive other

6   treatment or evaluation.  (<u>Id.</u>)  On April 15, 2004, Plaintiff reported to sick call at Big Spring

7   because his arm was going numb and weak.  (<u>Id.</u>)  X-rays were ordered and Plaintiff's

8   previous x-rays reviewed and he was informed on August 24, 2004 that there was a

9   "thickening" of the clavicle from the prior injury.  (<u>Id.</u> at 13.)  Plaintiff continued to suffer

10  from severe pain.  (<u>Id.</u>)  According to Plaintiff, a December 21, 2004, Big Spring medical

11  report indicated that Plaintiff's shoulder had healed improperly and that it would have to be

12  re-broken and re-set, which would be painful.  (<u>Id.</u>)  It is unclear from the Complaint whether

13  in fact that has occurred.

14  　　　　On January 22, 2005, Big Spring medical staff limited Plaintiff from lifting more than

15  30 pounds due to his shoulder injury.  (<u>Id.</u>)  According to Plaintiff, medical reports document

16  that he has continued to suffer pain and a burning sensation in his shoulder.  (<u>Id.</u>)  On May

17  9, 2005, a spinal x-ray was ordered because of pain radiating from his shoulder to his neck

18  and left arm and a narrowing of the disc space between C5-C6 and C6-C7 with some

19  osteophytosis was found.  (<u>Id.</u> at 13-14.)  Plaintiff alleges that he has continued to suffer pain

20  and limited use of his shoulder and arm.  (<u>Id.</u> at 14.)

21  　　　　Plaintiff asserts on information and belief that the inmates who signed the release

22  forms were appropriately treated.  (<u>Id.</u> at 10.)  He contends that he was not appropriately

23  treated because he refused to sign a release.  (<u>Id.</u> at 10, 17, 18.)  The Court construes the

24  Complaint to allege claims for retaliation by CCA and/or Dr. Sabal against him for refusing

25  to sign the release and/or filing a grievance regarding treatment of his shoulder.  The Court

26  also construes the Complaint to allege deliberate indifference to Plaintiff's serious medical

27  needs against Dr. Sabal in late 2004.  Plaintiff also alleges that CCA, the bus driver, and Dr.

28  Sabal were negligent with respect to care for his shoulder.

## IV.   Federal Law Claims

Plaintiff alleges several claims based on violations of federal law.  He alleges violations of his First, Eighth and Fourteenth Amendment rights pursuant to <u>Bivens</u>.  He also alleges claims under the ATS.  Plaintiff also appears to be attempting to allege claims under the Federal Tort Claim Act (FTCA).  Plaintiff's FTCA and ATS claims will be dismissed and he will be ordered to show cause why his <u>Bivens</u> claims should not be dismissed as time-barred.

### A.   <u>Bivens</u>

To state a <u>Bivens</u> claim, a plaintiff must allege that persons acting under color of federal law violated his constitutional rights.  <u>Martin v. Sias</u>, 88 F.3d 774, 775 (9th Cir. 1996) (citing <u>Van Strum v. Lawn</u>, 940 F.2d 406, 409 (9th Cir. 1991)).  Thus, an action under <u>Bivens</u> is identical to one brought pursuant to 42 U.S.C. § 1983 except for the replacement of a state actor under § 1983 by a federal actor under <u>Bivens</u>.  <u>Id.</u>

To state a valid constitutional claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant, and he must allege an affirmative link between the injury and the conduct of that defendant.  <u>Rizzo v. Goode</u>, 423 U.S. 362, 371-72, 377 (1976).  Further, a plaintiff must allege that a defendant's acts were more than merely negligent.  <u>Alfrey v. United States</u>, 276 F.3d 557, 568 (9th Cir. 2002); see <u>Daniels v. Williams</u>, 474 U.S. 327, 330-31 (1986) (plaintiff must plead more than mere negligence in a 42 U.S.C. § 1983 action).

#### 1.   CCA

Plaintiff alleges violation of his constitutional rights by CCA.  A <u>Bivens</u> action may *not* be brought against a private company acting under color of federal law in operating a prison. <u>Correctional Serv. Corp. v. Malesko</u>, 534 U.S. 61 (2001).  Accordingly, Plaintiff may not seek monetary relief against CCA for constitutional violations.  Plaintiff's allegations that CCA violated his constitutional rights will be dismissed.

#### 2.   John Doe

Plaintiff sues a fictitious John Doe Defendant, i.e., the bus driver.   Plaintiff's

1   constitutional claims against this Defendant will be dismissed for two reasons.  First, the use

2   of anonymous type appellations to identify defendants is generally disfavored.  Rule 10(a)

3   of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the

4   parties in the action.  As a practical matter, it is impossible in most instances for the United

5   States Marshal or his designee to serve a summons and complaint or amended complaint

6   upon an anonymous defendant.  Second, even if Plaintiff named the bus driver by his true

7   name, Plaintiff fails to allege more than negligence against him and therefore fails to state

8   a constitutional violation against him under <u>Bivens</u>.  Plaintiff's allegations that the bus driver

9   violated Plaintiff's constitutional rights will be dismissed.

10      **3.      Dr. Sabal**

11      Plaintiff alleges that Dr. Sabal acted with deliberate indifference to Plaintiff's serious

12   medical needs in violation of the Eighth and Fourteenth Amendments.  The failure to state

13   a claim includes circumstances where a defense is complete and obvious from the face of the

14   pleadings.  <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1228 (9th Cir. 1984) (applying former

15   § 1915(d) now codified at 28 U.S.C. § 1915(e)(2)(B)).  In the absence of waiver, a court may

16   raise the defense of statute of limitations *sua sponte*.  <u>See</u> <u>Levald, Inc. v. City of Palm Desert</u>,

17   998 F.2d 680, 687 (9th Cir. 1993); <u>see also</u> <u>Hughes v. Lott</u>, 350 F.3d 1157, 1163 (11th Cir.

18   2003) (appropriate to dismiss prisoner's complaint *sua sponte* as time-barred under

19   § 1915(e)(2)(B)); <u>Nasim v. Warden, Maryland House of Corr.</u>, 64 F.3d 951, 956 (4th Cir.

20   1995) (*en banc*) (same); <u>Pino v. Ryan</u>, 49 F.3d 51, 53 (2d Cir. 1995) (same); <u>Moore v.</u>

21   <u>McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994) (same); <u>Johnson v. Rodriguez</u>, 943 F.2d 104,

22   107-08 (1st Cir. 1991) (same).

23      In a <u>Bivens</u> action, the Court applies the statute of limitations of the forum state for

24   personal injury actions.  <u>Pesnell v. Arsenault</u>, 490 F.3d 1158, 1163 (9th Cir. 2007); <u>see</u>

25   <u>Wilson v. Garcia</u>, 471 U.S. 261, 266, 274-76 (1985); <u>TwoRivers v. Lewis</u>, 174 F.3d 987, 991

26   (9th Cir. 1999); <u>Vaughan v. Grijalva</u>, 927 F.2d 476, 478 (9th Cir. 1991).  The Arizona statute

27   of limitations for personal injury actions is two years.  <u>See</u> A.R.S. § 12-542(1); <u>Madden-</u>

28   <u>Tyler v. Maricopa County</u>, 943 P.2d 822, 824 (Ariz. Ct. App. 1997); <u>Vaughan</u>, 927 F.2d at

478.

It appears from the face of Plaintiff's Complaint that his claims against Dr. Sabal accrued more than two years before he filed his Complaint and that it is, therefore, time-barred. His complaint was filed on August 10, 2007 and signed on August 8, 2007. (Doc.# 1 at 30.) For his claim to be timely, they must have accrued no earlier than August 8, 2005, two years before his Complaint was filed. "[A] claim generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action." Cabrera v. City of Huntington Park, 159 F.3d 374, 379 (9th Cir. 1998). Plaintiff alleges that he suffered severe pain since the accident and that Dr. Sabal acted with deliberate indifference to his serious medical need in October - November, 2003. Thus, Plaintiff's constitutional claims against Dr. Sabal accrued no later than October-November 2003, but Plaintiff did not file this action until more than four years later. The Court will therefore order Plaintiff to show cause why his constitutional claims against Dr. Sabal should not be dismissed for failure to state a claim as facially time-barred.

**B.     Failure to State a Claim Under the FTCA**

Claims for money damages may be sought for negligent acts or omissions of employees or agents of the federal government under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 ("FTCA"). See Vander v. United States Dep't of Justice, 268 F.3d 661, 663 (9th Cir. 2001); Westbay Steel, Inc. v. United States, 970 F.2d 648, 651 (9th Cir. 1992). Claims under the FTCA may only be brought against the United States. 28 U.S.C. §§ 1346(b), 2679(a); Allen v. Veterans Admin., 749 F.2d 1386, 1388 (9th Cir. 1984) (individual agencies of the United States may not be sued). Further, under the statutory procedure set forth in 28 U.S.C. § 2675(a), a "tort claimant may not commence proceedings in court against the United States without first filing his claim with an appropriate federal agency and either receiving a conclusive denial of the claim from the agency or waiting for six months to elapse without a final disposition of the claim being made." Jerves v. United States, 966 F.2d 517, 519 (9th Cir. 1992); see Brady v. United States, 211 F.3d 499, 502 (9th Cir. 2000) (a claimant under the FTCA must comply with § 2675(a) before a district court

1    can exert subject matter jurisdiction over the claim); Caton v. United States, 495 F.2d 635,

2    638 (9th Cir. 1974).  The Ninth Circuit Court of Appeals has "repeatedly held that this 'claim

3    requirement of section 2675 is jurisdictional in nature and may not be waived.'"  Jerves, 966

4    F.2d at 519 (quoting Burns v. United States, 764 F.2d 722, 724 (9th Cir. 1985)).

5           In this case, Plaintiff has not named the United States as a Defendant for purposes of

6    seeking relief under the FTCA.  Further, he does not allege that he has presented any claim

7    for negligence against federal officers or agents to the appropriate federal agency prior to

8    commencement of this action as required by § 2675(a).  For both these reasons, Plaintiff fails

9    to state an FTCA claim.

10          **C.      Failure to State a Claim Under the ATS**

11          Plaintiff claims violations of the ATS.  These claims are predicated upon his status

12   as a Mexican citizen and the allegedly inappropriate care he received for his shoulder injury.

13   Essentially, he alleges that the failure to promptly and appropriately treat his injury

14   constituted "torture" in violation of the Torture Victim Protection Act of 1991, the Universal

15   Declaration of Human Rights Treaty, and the International Covenant on Civil and Political

16   Rights.  (Doc.# 1 at 6, 8, 9.)

17          The ATS provides that, "The district courts shall have original jurisdiction of any civil

18   action by an alien for a tort only, committed in violation of the law of nations or a treaty of

19   the United States."  28 U.S.C. § 1350.  The ATS does not give rise to a statutory cause of

20   action but only confers jurisdiction on federal courts in limited circumstances.  Sosa v.

21   Alvarez-Machain, 542 U.S. 692, 714 (2004).  To state a claim pursuant to the ATS, a

22   plaintiff must allege a violation of "'specific, universal, and obligatory' international norms."

23   Papa v. United States, 281 F.3d 1004, 1013 (9th Cir. 2002); see Presbyterian Church of

24   Sudan v. Talisman Energy, Inc., 244 F.Supp.2d 289, 304 (S.D.N.Y. 2003).  The Universal

25   Declaration of Human Rights Treaty does not "of its own force impose obligations as a

26   matter of international law."  Sosa, 542 U.S. at 734.  The International Covenant on Civil and

27   Political Rights was ratified by the United States "on the express understanding that it was

28   not self-executing and so did not itself create obligations enforceable in federal courts."  Id.

at 735.  Finally, Plaintiff fails to allege facts to support that he has been subjected to torture as defined under the Torture Victims Protection Act.[5]  Plaintiff's ATS claim will be dismissed.

**V.      State Tort Law Claims**

Plaintiff alleges that the bus driver negligently caused the accident resulting in Plaintiff's injury.  He alleges that CCA and/or the driver were negligent for failing to properly secure Plaintiff and/or for failing to use seat belts or other safety equipment to reduce or prevent injury in the event of an accident.  He alleges that CCA and Dr. Sabal were negligent with respect to his medical care for his injuries resulting from the accident.  These claims appear to be barred by the applicable statute of limitations.  Arizona law provides that any action for personal injury must be commenced within two years after the cause of action accrues.  A.R.S. § 12-542; see A.R.S. § 12-550.  Plaintiff alleges facts supporting that he knew of the injuries giving rise to his tort claims no later than December 21, 2004, but he did not commence this action until August 8, 2007, more than two years later.  Thus, any state tort law claim appears to be time-barred.  Plaintiff will be ordered to show cause why any state law tort claim is not barred by the statute of limitation.

/       /        /

---

[5]  Under the Act, torture is defined to mean, "any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind[.]"  Mental pain or suffering refers to "prolonged mental harm caused by or resulting from 'the intentional infliction or threatened infliction of severe physical pain or suffering;' the administration or application, or threatened administration or application, of mind altering substances or other procedures calculated to disrupt profoundly the senses or the personality; the threat of imminent death; or the threat that another individual will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind altering substances or other procedures calculated to disrupt profoundly the senses or personality."  28 U.S.C. § 1350 Note at § 3.

**VI.    Warnings**

    **A.    Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

    **B.    Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

    **C.    Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

    **D.    Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS HEREBY ORDERED:**

(1)    Plaintiff's Application to Proceed *In Forma Pauperis* is **granted**. (Doc.# 3.)

(2)    As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and no initial partial filing fee is assessed.

(3)    Plaintiff's <u>Bivens</u> claims against Defendant John Doe and CCA and his ATS and FTCA claims against all Defendants are **dismissed**.

(4)     Plaintiff must file a written response to this Order in which he shows cause why his <u>Bivens</u> claims against Defendant Sabal and his state tort law claims against all of the Defendants should not be dismissed for failure to state a claim as time-barred no later than **November 10, 2007**.

(5)     If Plaintiff fails to file a written response in which he attempts to show cause why his <u>Bivens</u> claims against Defendant Sabal and his state tort law claims against all of the Defendants should not be dismissed for failure to state a claim as time-barred by November 10, 2007, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action with prejudice.

DATED this 16th day of October, 2007.


Stephen M. McNamee
United States District Judge